IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

INTRUST FINANCAL CORPORATION,

        Plaintiff,

vs.                                 Case No. 11-1312-SAC

ENTRUST FINANCIAL CREDIT UNION,

        Defendant.

## MEMORANDUM AND ORDER

This trademark infringement case comes before the Court on Defendant Entrust Financial Credit Union's motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue to Virginia. Plaintiff Intrust Financal Corporation opposes the motion to dismiss and the motion to transfer, contending that specific jurisdiction is proper.

**I. Motion to Dismiss Standard**

Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction by a preponderance of the evidence. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008). Plaintiff may make this showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007). To the extent they are uncontroverted, the Court must accept the

well-pleaded allegations of the complaint. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995). The Court resolves any factual disputes in favor of the plaintiffs. *Wenz,* 55 F.3d at 1505.

**II. Facts**

The facts are undisputed. Entrust Federal Credit Union was founded in 1970 as a not-for-profit credit union to serve the "banking" needs of the home office staff of the Foreign Mission Board (now the International Mission Board.) Several years later, it expanded its services to include its overseas missionaries, then expanded again in the early 1990's to include other organizations sharing a similar Christian heritage. Dk. 36, Exh. A. On August 12, 2011, Entrust Federal Credit Union ceased to exist and Entrust Financial Credit Union (Entrust) began.

Entrust is a Virginia state-chartered credit union having one location (Richmond, Virginia), 21 employees, and 9,690 members. During the past five years, 46 of those members listed a Kansas address when applying for membership with Entrust. An additional 22 members listed a Kansas address on Entrust documents at some point after initial membership.

Entrust is not registered with the Kansas Secretary of State to do business in Kansas. It is incorporated in Virginia, has its principal place of business there, and has never sent any of its employees to Kansas for business purposes. Entrust has never directly solicited business in the State of Kansas, but has sent its Kansas members the same advertising and

marketing materials it sent to all of its members, regardless of their residence. These materials bear the allegedly-infringing Entrust mark. One such document encourages Entrust members to have their family members join Entrust, and states no geographical restriction.

Entrust has no branch offices bearing its name, in Kansas or elsewhere, but has entered into a "Shared Services Agreement" which enables Entrust's members to transact business with Entrust at many locations outside the State of Virginia. By that agreement, Entrust appointed a special agent to represent it for the sole purpose of conducting transactions for Entrust through the network of shared service centers. By that agreement, Entrust offers its members various financial services in Kansas via approximately 32[1] "Credit Union Service Centers," and multiple ATM machines. Those services include account inquiries, withdrawals, deposits, loan payments, account transfers, and check cashing. Entrust tells its members that it is "part of a network of more than 4,000 Credit Union Service Centers that act as branches of Entrust...", Dk. 36, Exh. K, and otherwise refers to these locations as "shared branches." Dk. 36, Exh. M. The Credit Union Service Centers function similarly to an ATM machine, but have an employee present to provide various services to members as if the members were transacting business in the lobby of their own credit union.

---

[1] Entrust listed thirty-two of its credit union service centers in Kansas on July 11, 2011.

Credit Union Service Centers in Kansas reported a total of twenty-two transactions (20 deposits and two withdrawals), made by persons at four addresses in Kansas, between August 2011 and March 7, 2012. Dk. 36, Exh. M. Each transaction produced a receipt bearing the allegedly infringing "Entrust" name. In a period of over five years (from 2007–2012), Entrust members completed approximately 250 transactions at ATMs located in Kansas, 160 of which were completed by persons listing a Kansas residential address. *Id.*, Exh. O.

Entrust's membership application form, which does not state any geographical restriction, asks prospective members to state the number of miles they are located from "the credit union or one of its service centers." Dk. 36, Exh. P. But Entrust's membership eligibility page on its website states, "Our membership consists of churches and Christian-based organizations in the Richmond and surrounding area." Dk. 20, Exh. D. Entrust's webpage also lists each church and organization eligible for membership, all of which are based in the Richmond, Virginia area. *Id*.

Entrust's online loan application form includes a drop-down box allowing the applicant to select the state in which their home is located, and Kansas is included in the list of states. Entrust's loan agreements specifically reference Kansas in some of its provisions, as noted later in this memorandum.

The record does not include Entrust's charter, constitution, or by-laws, but an uncontradicted affidavit from its President and CEO establishes the following: 1) all of Entrust's clientele are associated with Christian organizations in the Richmond, Virginia area; 2) only individuals affiliated with Christian churches or organizations located in the Richmond, Virginia area are eligible to become members of Entrust; 3) membership and loan applications of individuals and organizations not affiliated with a Richmond, Virginia area Christian organization are not considered by Entrust; 4) Entrust's target market is Christian individuals and organizations in the Richmond, Virginia area; 5) The Virginia State Corporation Commission's Bureau of Financial Institutions acts as a regulator for Entrust and must approve all organizations before they are eligible for membership with Entrust, and would not approve an organization located outside of Virginia; and 6) to the best of her knowledge, all Entrust members with ties to Kansas are missionaries living abroad. Dk. 20, Exh. A.

### III. Motion to Dismiss

"[J]urisdiction is in the first instance a question of authority rather than fairness." *J. McIntyre Machinery, Ltd. v. Nicastro*, __ U.S. __, 131 S.Ct. 2780, 2789 (2011).

> [P]ersonal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis. The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct. Personal jurisdiction, of course, restricts "judicial power not as a

> matter of sovereignty, but as a matter of individual liberty," for due process protects the individual's right to be subject only to lawful power. *Insurance Corp.*, 456 U.S., at 702, 102 S.Ct. 2099. But whether a judicial judgment is lawful depends on whether the sovereign has authority to render it.

*Id.*

The Court first asks whether any applicable statute authorizes the service of process on the defendant, then examines whether the exercise of such statutory jurisdiction comports with due process. *Trujillo v. Williams,* 465 F.3d 1210, 1217 (10th Cir. 2006). Plaintiff's claims are brought pursuant to The Lanham Act, which does not provides for nationwide service of process, *see* 15 U.S.C. § 1051 *et seq.* This Court therefore applies the law of the state in which it sits. *See Dudnikov,* 514 F.3d at 1070. Kansas' long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, *Fed. Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1305 (10th Cir. 1994), making the personal jurisdiction issue one of federal constitutional law.

For the court's exercise of jurisdiction to comport with due process, defendant must have "minimum contacts" with the State of Kansas, "such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.' " *Dudnikov*, 514 F.3d at 1070. These contacts with the forum state must be more than "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). "Minimum contacts" can be established either generally or specifically.

6

### A. General Jurisdiction

Entrust has not explicitly consented to jurisdiction in Kansas, is not alleged to be incorporated or have its principal place of business in Kansas, and has no registered agent in Kansas. No facts show circumstances of a course of conduct evidencing Entrust's intention to benefit from or submit to the laws of Kansas. "Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there." *Shrader v. Biddinger*, 633 F.3d 1235, 1246-47 (10th Cir. 2011). Entrust's affiliations with the State of Kansas have not been shown to be so "continuous and systematic" as to render it essentially at home in the forum State. *See International Shoe Co. v. Washington,* 326 U.S. 310, 317 (1945). No general jurisdiction is alleged, *see* Dk. 36, p. 9, or has been shown. Thus Entrust, which operates primarily outside Kansas, has a "due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Machinery*, 131 S.Ct. at 2787.

### B. Specific Jurisdiction

Only specific jurisdiction is alleged in this case. Specific jurisdiction depends on an

> "affiliatio[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. (Citations omitted.). In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or

7

connected with, the very controversy that establishes jurisdiction." von Mehren & Trautman 1136.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S.Ct. 2846, 2850-51 (2011). As a general rule, the exercise of judicial power is not lawful unless the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Machinery, Ltd.*, __ U.S. __, 131 S.Ct. at 785, quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Tenth Circuit applies a three-part test to determine specific jurisdiction. *Dudnikov,* 514 F.3d at 1071.

> First, the out-of-state defendant must have "purposefully directed" its activities at residents of the forum state; and second, plaintiff's injuries must "arise out of" defendant's forum-related activities. *Dudnikov,* 514 F.3d at 1071 (quoting *Burger King,* 471 U.S. at 472). Taken together, the first two parts of the test determine whether plaintiff has demonstrated minimum contacts. Third, the exercise of personal jurisdiction over defendant must be consistent with traditional notions of fair play and substantial justice.

*Dudnikov,* 514 F.3d at 1071 (citing *International Shoe,* 326 U.S. at 316).

To meet its burden to show minimum contacts with Kansas, Plaintiff points to the following: 1) Entrust knowingly received membership applications from individuals listing Kansas addresses; 2) Entrust continues to service Kansas members through its 32 shared branches and ATMs in Kansas, enabling them to transact business with Entrust and to receive receipts bearing the name "Entrust"; 3) Entrust's loan application form includes "Kansas" in its drop-down menu of states, and its loan documents

8

have "very specific instructions for Kansas residents," and 4) Entrust sent advertisements directly to Kansas members, encouraging them to use other financial services offered by Entrust and to tell others about them, regardless of their geographical location.

### 1. Members and Transactions in Kansas

Plaintiff finds it significant that Entrust has members who apparently reside in Kansas.[2] But the record reflects that only 68 of 9,690 members have ties to Kansas, and that they collectively do business with Entrust via the credit union service centers or an ATM three or four times a month (average).

These are insignificant numbers. "[S]mall percentages of business contacts do not satisfy the substantial contacts threshold…" *Advisors Excel, LLC v. Senior Advisory Group, LLC*, 2011 WL 3489884, at 4 (D.Kan. 2011) (finding 0.52% of its total number of independent advisors and 0.30% of defendant's total revenue insufficient for general jurisdiction), citing *Capitol Fed. Sav. Bank v. E. Bank Corp.*, 493 F.Supp.2d 1150, 1165 (D.Kan. 2007) (holding that Kansas residents comprising 0.008% of Massachusetts bank's customers were not 'substantial').

Additionally, Plaintiff has not shown that Kansas residents in general are eligible for membership in Entrust. Instead, the undisputed facts show

---

[2] Entrust's Kansas members may be missionaries living abroad who own property in Kansas or have designated someone in Kansas to handle their finances for them in their absence. But for purposes of this motion, the Court assumes Entrust's members with Kansas ties are Kansas residents.

that Entrust's membership is limited to individuals affiliated with Christian churches or organizations located in the Richmond, Virginia area – thus it is merely incidental and not purposeful that any members reside in Kansas.

### 2. Loan Documents Reference Kansas

Plaintiff contends that Entrust's loan documents[3] specifically reference Kansas, signaling a "desire and intent to continue growing its business" in Kansas. Dk. 36, p. 12. The cited document contains two references to Kansas. The first provides:

> 12. DEFAULT – The following paragraph applies to borrowers in Idaho, Kansas, Maine and state chartered credit unions lending to South Carolina borrowers: You will be in default if you do not make a payment of the amount required when it is due. You will also be in default if we believe the prospect of payment, performance, or realization on any property given as security is significantly impaired.

Dk. 36, Exh. F, p. 2. Three separate paragraphs follow, respectively addressing default of borrowers in Wisconsin, in Iowa, and in all other states and federally chartered credit unions loaning to South Carolina borrowers. The second provision states:

> 13. ACTIONS AFTER DEFAULT – The following paragraph applies to borrowers in Colorado, District of Columbia, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska, West Virginia and state chartered credit unions lending to South Carolina borrowers: When you are in default and after expiration of any right you have under applicable state law to cure your default, we can demand immediate payment of the entire unpaid balance under the Plan without giving you advance notice.

Dk. 36, Exh. F, p. 2.

---

[3] The referenced document appears to be a stock credit and security agreement not necessarily drafted by Entrust.

The referenced document is drafted so that it may be used by anyone in the United States, and does not specifically target Kansas residents. It may reveal Entrust's intent to serve its members who happen to reside in Kansas, but does not assist Plaintiff in showing that Entrust purposefully directed its business or contacts to the State of Kansas or its residents.

### 3. Website Includes Kansas

Plaintiff additionally points to various references to the State of Kansas on Entrust's website. Both parties recognize the Tenth Circuit's holding that "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Shrader*, 633 F.3d at 1241 (noting that in the internet context, specific jurisdiction asks whether a defendant "deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.") *Compare Silver v. Brown,* 382 Fed.Appx. 723 (10th Cir. 2010).

Nonetheless, Plaintiff contends that Entrust purposefully directed its activities to Kansas by "allowing users to select Kansas from a drop-down menu of states when submitting an online loan application." Dk. 36, p. 11. Plaintiff cites two cases as support for this proposition. But the first recognizes that "in the majority of cases in which a court has found that a website has conferred jurisdiction, part of the reasoning has been that a

significant amount of business or communication has occurred between the defendant and resident of the forum state through the site." *Tristar Products, Inc. v. SAS Group, Inc.*, 2009 WL 3296112, at 3 (D.N.J. 2009). The second echoes that rationale in finding, "[a] website whose owners engage in repeated online contacts with forum residents through the site will likely satisfy the minimum contacts requirement." *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F.Supp.2d 669, 673 (E.D.Tex. 2006). No showing of repeated or significant online communication or business between Entrust and Kansas residents has been made in this case.

Further, both cases assume a fact not present in this case – that by using the website, including its drop-down box, any Kansas resident could transact business with the alleged infringer. But the facts show that a person could not "select Kansas from a drop-down menu of states when submitting an online loan application" unless that person were already an Entrust member, and one cannot become an Entrust member without being affiliated with a Virginia Christian organization. This is a significant limitation. Given the facts, nothing about Entrust's inclusion of the State of Kansas among all 50 states listed on its website materials indicates that Entrust purposefully directed its activities to residents of Kansas. Entrust's knowledge that some of its members, whose eligibility to become members rested on their affiliation with Virginia organizations, reside in Kansas is insufficient. The Supreme Court's precedents make clear that "it is the defendant's actions,

not his expectations, that empower a State's courts to subject him to judgment." *J. McIntyre Machinery*, 131 S.Ct. at 2789. See *be2 LLC v. Ivanov*, 642 F.3d 555, 558 -559 (7th Cir. 2011).

### 4. Advertising in Kansas

Plaintiff contends that Entrust's advertising in Kansas helps show minimum contacts in the forum state. But the record does not show that Entrust directs any advertising, whether by mass mailings or other media, to persons residing in Kansas who are not its members. Entrust's advertising targets the market of Christian individuals and organizations in the Richmond, Virginia area. It sends advertisements to its members, regardless of their location. That Entrust members living in Kansas were asked to tell their family members about Entrust's services does not show that those members would have been accepted for membership, absent an affiliation with a Richmond-area Christian organization. That some of Entrust's advertising reaches Kansas residents is only incidental to their membership, and is insufficient to establish purposeful availment. *See Capitol Federal Sav. Bank v. Eastern Bank Corp.*, 493 F.Supp.2d 1150, 1165 (D.Kan. 2007) (bank's advertising which targeted the New England states and reached Kansas residents only incidentally, if at all, is insufficient to establish purposeful availment); *cf, Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001) (advertising in national publications

that makes its way into the state is insufficient to justify general jurisdiction where there is no direct advertising in the forum).

Viewed collectively, the contacts between Entrust and the State of Kansas are constitutionally insufficient to warrant the exercise of personal jurisdiction over Entrust. Thus the Court finds that it lacks personal jurisdiction over Entrust in this case.

## IV. Motion to Transfer

Entrust moves the Court, as an alternative to dismissal, to transfer the case to Virginia pursuant to § 1404(a). Plaintiff opposes that motion, and the Court lacks sufficient facts to weigh the convenience of the parties and witnesses, as that statute requires.

This court has the power, however, to *sua sponte* transfer Intrust's case to the United States District Court for the District of Virginia pursuant to 28 U.S.C. § 1631. *Trujillo v. Williams,* 465 F.3d 1210, 1223 (10th Cir. 2006). Where a court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, the correct course of action is to transfer pursuant to § 1631. *Id.* Because this lawsuit could have been brought in the Eastern District of Virginia, and a transfer to that forum would conserve judicial resources and avoid unnecessary legal expenses, and Plaintiff's case does not appear to be legally frivolous, the Court finds that the interests of justice compel transfer rather than dismissal. The Court therefore directs that this case be transferred to the United States District

Court for the Eastern District of Virginia, at Richmond, pursuant to 28 U.S.C. § 1631.

IT IS THEREFORE ORDERED that Entrust's motion to dismiss for lack of personal jurisdiction (Dk. 19) is denied.

IT IS FURTHER ORDERED that the Clerk transfer this action to the United States District Court for the Eastern District of Virginia, at Richmond, pursuant to 28 U.S.C. § 1631.

Dated this 20th day of July, 2012, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge